[No. C032388. Third Dist. Sept. 29, 2000.]

ANNETTE WISE, Plaintiff and Respondent, v.
THRIFTY PAYLESS, INC., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the discussion.

1298

**COUNSEL**

Kelly, Herlihy, Advani & Klein, Jonathan Allan Klein and Jerry Schreibstein for Defendant and Appellant.

Karen H. Henry, Inc., and Thomas S. Crary for Plaintiff and Respondent.

## OPINION

**CALLAHAN, J.**—This case calls on us to explore the litigiously fertile subject of the litigation privilege of Civil Code section 47, subdivision (b) (section 47(b)). We are asked to answer the following question: If a defendant's tortious conduct in disclosing confidential information about a plaintiff was outside the scope of the litigation privilege *ab initio*, should the plaintiff be precluded from introducing evidence of damages resulting from subsequent use of the information by a third party in a litigation forum? We conclude allowing the defendant to escape responsibility for its wrongful behavior under those circumstances would extend the privilege well beyond its judicial and statutory underpinnings; we therefore decline to adopt such a rule.

### OVERVIEW

By special verdict, a jury awarded plaintiff Annette Wise $100,000 in her suit against defendant Thrifty Payless, Inc. (Payless), for damages resulting from the unauthorized disclosure by Payless of prescription drug information to her husband, Rick Wise, from whom she had recently separated in contemplation of a marital dissolution.

On this appeal, Payless claims the trial court erroneously refused to preclude plaintiff from introducing evidence of Mr. Wise's use of the printout in the dissolution litigation and in his communications to the Department of Motor Vehicles (DMV). Payless also argues that plaintiff cannot recover on any tort theory because its disclosure of the prescription list to Mr. Wise was authorized by law. We reject both contentions.

### BACKGROUND

Plaintiff filed a complaint against Payless alleging that on January 31, 1997, while she was in the midst of an acrimonious separation from her former husband, Rick Wise, Payless, wrongfully and without plaintiff's authorization, disclosed to him "sensitive, private and confidential information regarding the medications and treatments that plaintiff's treating physicians had prescribed for various health-related conditions." She prayed for general and special damages according to proof.

The case was tried to a jury on theories of violation of the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq. (CMIA)), negligence, and invasion of privacy. The record shows that plaintiff was married to Mr. Wise in 1984. They had two children together, born in 1991 and 1993.

During the marriage, plaintiff had been taking numerous prescription medications for allergies and a sinus condition which had required surgery. She also took steroids for her sinuses and Phen-Fen to combat excessive weight gain, caused mainly by use of the steroids.

On January 16, 1997, the couple decided to end their marriage. Plaintiff and Mr. Wise had agreed on a custody arrangement for the children, and she was expecting the marital dissolution to go smoothly.

At the end of January, plaintiff visited the Payless pharmacy where the family members regularly picked up their prescriptions. She informed the clerk Faye Hill that she "was getting a divorce" and had moved out of the family residence; she further advised of her change of address and instructed the clerk that she did not want her medical information disclosed to anyone, and "especially to my husband Rick." A couple of hours later, plaintiff returned to the pharmacy and gave Payless employee Linda Earls the same directive.

The next day, Mr. Wise came into the pharmacy to fill a prescription. He told attending clerk Toni Gomez he wanted a medical expense report for plaintiff for purposes of preparing his tax returns. Gomez gave Mr. Wise a printout covering January 1996 to January 1997. Titled "Medical Expenses" for patient "Wise, Annette E.," the printout listed all of the prescription drugs ordered by plaintiff from the pharmacy in the past year.

That night, a Payless supervisor called plaintiff to apologize for having violated her explicit instructions. This proved of little comfort. Mr. Wise embarked on a campaign of harassment and intimidation against plaintiff. He inundated her with faxes and e-mails and contacted family and friends, accusing plaintiff of being a drug abuser. His attitude toward custody changed drastically—claiming she could not adequately care for the children, he threatened to take her children away and have her thrown in jail for being a drug abuser. Once dissolution proceedings were filed, Mr. Wise fought for custody of the children, accusing plaintiff in court papers of being a drug addict and a danger to her children. He obtained an order requiring her to undergo a psychological evaluation. Despite Mr. Wise's efforts, plaintiff has obtained temporary custody of the couple's children.

What was expected to be an "easy" dissolution turned into a harrowing ordeal for plaintiff. She had to seek psychological counseling due to the stress from the dissolution proceedings, which primarily centered around her fear that Mr. Wise would take her children away from her. By the time of trial she had spent $20,000 on attorney fees and the custody dispute was still unresolved.

Mr. Wise also attached the Payless drug printout to a letter he wrote to the DMV, charging that plaintiff had violated that section of the Vehicle Code prohibiting a person addicted to drugs from driving a motor vehicle. The letter accused plaintiff of being addicted to prescription drugs and painkillers, stated that she had been involved in several accidents in the last 12 years, and expressed fear for the safety of the children while traveling in the car with plaintiff.

As a result of the letter, the DMV launched an investigation into plaintiff's fitness to operate a motor vehicle. She was compelled to retake a driving examination, furnish additional medical information, and fill out a questionnaire. Eventually, the DMV closed the investigation without taking action.

APPEAL

I

*Motion to Limit Damage Evidence*

In its pretrial motion in limine, Payless sought to preclude plaintiff from "seeking the recovery of damages which are inimical to the public policies of the State of California." Specifically, Payless asked the trial court to prohibit plaintiff or any of her witnesses from making any reference to damages or loss suffered by her as the result of her husband's use of the drug printout in either the dissolution action or in investigative proceedings conducted by the DMV. The court denied the motion.

Payless claims reversible error as the result of the denial of its in limine motion. Its argument is twofold: first, under settled law, *Mr. Wise's* use of the drug information was absolutely protected by the litigation privilege of section 47(b); and second, public policy mandates a rule which would preclude a plaintiff from recovering damages caused by such privileged conduct, even though the defendant-tortfeasor was neither a litigant nor a participant in the court proceeding. Payless does not deny that there is no case which propounds such a rule. Nevertheless, it argues that this court should adopt one, based upon the overriding purpose of the litigation privilege and existing California cases which point in that direction.

A.

At the outset and contrary to plaintiff's argument, we find that *had Mr. Wise been a defendant* in this action, the litigation privilege would bar

plaintiff from recovery of damages from him proximately caused by his use of the drug printout in the family court and DMV proceedings.

Section 47(b) provides in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] . . . [i]n any . . . judicial proceeding." The litigation privilege is absolute, which means it applies regardless of the existence of malice or intent to harm. (*Abraham v. Lancaster Community Hospital* (1990) 217 Cal.App.3d 796, 810 [266 Cal.Rptr. 360].) ■ "Although originally enacted with reference to defamation actions alone [citation], the privilege has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution. [Citations.]" (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29 [61 Cal.Rptr.2d 518], italics in original.) The privilege vindicates several public policies: "The principal one is ensuring free access to the courts by prohibiting derivative tort actions. [Citation.] The privilege also promotes complete and truthful testimony, encourages zealous advocacy, gives finality to judgments, and avoids unending litigation. [Citation.]" (*Budwin v. American Psychological Assn.* (1994) 24 Cal.App.4th 875, 880 [29 Cal.Rptr.2d 453].)

In the landmark case of *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365] (*Silberg*), the California Supreme Court formulated the rule as follows: "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."

■ Mr. Wise's use of the drug printout in the dissolution action to persuade the court plaintiff was not deserving of custody of their children fulfills all four *Silberg* requirements. Case law is clear that section 47(b) absolutely protects litigants and other participants from being sued on the basis of communications they make in the context of family law proceedings. (See *Begier v. Strom* (1996) 46 Cal.App.4th 877, 882 [54 Cal.Rptr.2d 158]; *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1270 [258 Cal.Rptr. 787]; *Obos v. Scripps Psychological Associates, Inc.* (1997) 59 Cal.App.4th 103, 108-109 [69 Cal.Rptr.2d 30].) Any other rule would surely spawn a second layer of litigation between a former spouse or a spouse currently seeking a dissolution whose goal it is to make his or her former partner's life miserable.

Plaintiff's argument that her statutory and constitutional right to privacy trumps the litigation privilege must be rejected as inconsistent with subsequent pronouncements of the California Supreme Court that the privilege is

absolute and precludes recovery on all tort theories, *including* claims for invasion of privacy. (*Silberg, supra,* 50 Cal.3d at p. 215; *Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417] (*Ribas*); *Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 209 [271 Cal.Rptr. 191, 793 P.2d 524].)[1]

▮ Likewise, the litigation privilege intervenes to protect Mr. Wise from civil damage claims arising from his use of the printout in communications with the DMV regarding plaintiff's fitness to drive. The litigation privilege is not limited to the courtroom, but encompasses actions by administrative bodies and quasi-judicial proceedings. (*Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 55 [138 Cal.Rptr. 540].) The privilege extends beyond statements made in the proceedings, and includes statements made to initiate official action. (*Slaughter* v. *Friedman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886].)

Persons addicted to narcotics may not operate motor vehicles on the public roadway. (Veh. Code, § 23152, subd. (c).) The DMV is a public agency, authorized to conduct an investigation to determine whether the license of any person should be suspended or revoked. (Veh. Code, § 13800.) The department's proposed decision to revoke or suspend a person's driver's license is subject to an evidentiary hearing and decision by an administrative officer or body, as well as review by the courts. (Veh. Code, § 14100 et seq.)

An absolute privilege exists to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing. (*Braun* v. *Bureau of State Audits* (1998) 67 Cal.App.4th 1382, 1390 [79 Cal.Rptr.2d 791].) The privilege is based on "[t]he importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity." (*King* v. *Borges* (1972) 28 Cal.App.3d 27, 34 [104 Cal.Rptr. 414].) Thus, Mr. Wise's report to the DMV regarding his wife's drug usage and its possible impact on her ability to safely operate a motor vehicle squarely falls within the privilege for quasi-judicial proceedings.

### B.

▮ Having determined that *Mr. Wise* was privileged to use the prescription list in litigation, we consider Payless's premier contention that plaintiff

---

[1]Plaintiff's heavy reliance on *Cutter* v. *Brownbridge* (1986) 183 Cal.App.3d 836 [228 Cal.Rptr. 545] is unconvincing. *Cutter* not only predates *Silberg,* but its analysis, which "weighs" a plaintiff's constitutional right to privacy against the interests promoted by the litigation privilege (*id.* at pp. 844-848), clearly conflicts with the absolute nature of the privilege as subsequently stated by the state Supreme Court.

should have been precluded from recovering any damages against *Payless* arising from the same use on public policy grounds. Payless asserts that permitting recovery against a defendant for a third party's privileged conduct would conflict with the basic purpose of the privilege, which is to encourage the free flow of information in litigation by participants therein.[2]

Payless's proposal confronts an immediate and obvious hurdle: regardless of whether Mr. Wise's conduct was privileged, *Payless's own tortious conduct* clearly was not. In fact, Payless's disclosure of private medical information about plaintiff to Mr. Wise did not satisfy any of the four elements of the *Silberg* test: (1) it was not made in the course of judicial or quasi-judicial proceedings; (2) Payless was not a litigant "or other participant[] authorized by law"; (3) the disclosure was not made to further the object of litigation (instead, it was given to Mr. Wise "for tax purposes"); and (4) there was no logical relation to any ongoing or contemplated legal proceeding. (*Silberg, supra,* 50 Cal.3d at p. 212.) Nonparticipants and non-litigants to judicial proceedings are never protected from liability under section 47(b). (See *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 345 [60 Cal.Rptr.2d 539]; *Susan A. v. County of Sonoma* (1991) 2 Cal.App.4th 88, 93-94 [3 Cal.Rptr.2d 27].) Payless's argument thus flounders from the outset.

Shorn of its adornments, Payless's argument is in reality a plea for refuge from the consequences of its own tortious conduct under the blanket of a privilege enjoyed by a third party. Such a rule would contravene two fundamental principles governing tort liability.

First, Civil Code section 1714 states, in pertinent part, "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . . ." "The principle that everyone is responsible for one's own negligent acts is firmly entrenched in California law." (*Grahn v. Tosco Corp.* (1997) 58 Cal.App.4th 1373, 1385 [68 Cal.Rptr.2d 806].) Negligence law focuses on *each person's* responsibility for his or her own care or lack thereof.

Second, section 3333 of the Civil Code states that the "measure of damages" for a tort is generally the "amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Under this section "[t]ort damages are awarded to compensate

---

[2]Payless concedes here, as it did in the trial court, that even had it won the motion in limine, plaintiff would still have had a minimal claim based on those damages proximately caused by use of the drug printout outside the litigation arena, for example, Mr. Wise's use of information in faxes and e-mails to harass plaintiff.

a plaintiff for *all* of the damages suffered as a legal result of the defendant's wrongful conduct." (*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 786 [69 Cal.Rptr.2d 466], italics in original.)

Allowing a party at fault to evade responsibility for its wrongful conduct on the coattails of a statutory privilege enjoyed by someone else conflicts with both of the foregoing statutory precepts. It is ill-advised for this court to fashion such a broad exception to these bedrock rules governing tort liability absent a clear directive from the Legislature.

Payless also complains that holding it "vicariously liable" for Mr. Wise's privileged conduct would vitiate the purpose behind the litigation privilege. But we do not accept the characterization of plaintiff's recovery of economic and noneconomic damages arising from Mr. Wise's conduct in litigation as the imposition of vicarious liability on Payless.

■ Vicarious liability is based on the concept that one person's wrongful act will be *imputed* to another despite the fact the latter is free from fault. It is an exception to the general rule that persons are only responsible for their own wrongful acts. (See Prosser & Keeton, Torts (5th ed. 1984) § 69, pp. 499-500.) "It is only where a person *actually acts through another to accomplish his own ends* that the law will or should impose such vicarious liability." (*King v. Ladyman* (1978) 81 Cal.App.3d 837, 842 [146 Cal.Rptr. 782], italics added.) ■ Mr. Wise was not acting through Payless to accomplish his own ends when using the information Payless wrongfully disclosed in litigation. This is simply a case where the damage suffered by the plaintiff includes acts of third parties which, under all the circumstances, were the result of the defendant's initial breach of duty. Payless was no more held vicariously liable for Mr. Wise's use of its wrongfully disclosed information than a landlord who is found to have breached his duty to protect patrons from foreseeable criminal behavior can be said to be vicariously liable for the acts of the criminal. (See *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653]; *Cohen v. Southland Corp.* (1984) 157 Cal.App.3d 130 [203 Cal.Rptr. 572].)[3]

None of the cases cited by Payless support the rule it advocates because they all involve a defendant who was either a *participant or litigant* in

---

[3]California courts have rejected the blanket rule that an intervening criminal or tortious act is by its very nature a superseding cause (see, e.g., *Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [192 Cal.Rptr. 857, 665 P.2d 947]; *Rosh v. Cave Imaging Systems, Inc.* (1994) 26 Cal.App.4th 1225, 1236 [32 Cal.Rptr.2d 136]), instead adopting the view that " '[i]f the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes [the] actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' " (*Richardson v. Ham* (1955) 44 Cal.2d 772, 777 [285 P.2d 269], citing Rest. Torts, § 449.) This case presents a classic example of this principle.

judicial proceedings. In *Silberg*, the plaintiff tried to sue an attorney for recommending an assertedly biased psychologist as a neutral counselor in family law custody proceedings. (*Silberg, supra,* 50 Cal.3d 205.) In *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30 [32 Cal.Rptr.2d 200, 876 P.2d 999], the plaintiff sought damages from a psychiatrist for disclosing confidential medical information to an insurer in the midst of malpractice litigation.

*Ribas,* which Payless proclaims the case most supportive of its position, fails to impress. In *Ribas,* the defendant attorney eavesdropped on a telephone conversation which a wife had with her former husband during a divorce proceeding. The defendant then testified on the wife's behalf at an arbitration hearing as to the contents of conversation. In partially reversing the dismissal of the husband's lawsuit, the California Supreme Court distinguished between the noncommunicative act of eavesdropping without a party's consent, a statutory violation, and the *attorney's testimony* at the hearing, which is protected by the litigation privilege. The court held that the plaintiff could recover damages based on the nonconsensual eavesdropping, but that the action was barred insofar as it sought to recover for injury stemming from the attorney's testimony. (*Ribas, supra,* 38 Cal.3d at p. 364; see also *Susan S. v. Israels* (1997) 55 Cal.App.4th 1290 [67 Cal.Rptr.2d 42] [attorney could be liable for invasion of privacy for reading and disseminating plaintiff's private medical records, but not for using them at trial].) *Ribas* reaffirms our conclusion that misconduct outside the litigation umbrella is not shielded by the privilege.

All of these cases are consistent with the rationale behind the litigation privilege which is to "immuniz[e] *participants* from liability for torts arising from communications made during judicial proceedings," placing "upon *litigants* the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, . . ." (*Silberg, supra,* 50 Cal.3d at p. 214, italics added.) This policy of ensuring free access to the courts, encouraging zealous advocacy, and giving finality to judgments is not served by immunizing nonparticipants and nonlitigants whose wrongful conduct is unrelated to the judicial process.

Payless offers up the argument that "those supplying information utilized by litigants should not be punished for communications based upon such information where the resultant communications are deemed legally necessary and valuable and, themselves, absolutely beyond reproach." However, Payless is not being "punished" for supplying information to a litigant or even a prospective litigant. Had Payless provided the information to a litigant or attorney in order to further the object of litigation this case would

stand in a far different posture, for there the paramount goal of encouraging freedom of access to the courts would be implicated. (See *Heller v. Norcal Mutual Ins. Co, supra,* 8 Cal.4th at p. 45.) Payless did no such thing in this case. Instead, it disclosed confidential medical data about plaintiff, after being instructed not to do so, to an embittered spouse who ostensibly wanted it for tax purposes. Regardless of whether the privilege protected Mr. Wise from liability for his subsequent communications in the litigation forum, Payless cannot avoid the insurmountable fact that *its communication* outside that forum enjoyed no such protection. We find no persuasive reason to confer section 47(b) immunity to one who wrongfully reveals confidential information simply because the disclosure *subsequently* becomes a hot potato in the course of court litigation or administrative hearings.

In its reply brief, Payless tenders a laundry list of complaints about adverse pretrial discovery rulings. But instead of challenging these rulings directly, Payless claims they illustrate the point that having to defend against damage claims arising from the conduct of third parties during judicial proceedings imposed on it an "unfair litigation burden," and left the jury with only the plaintiff's "word for what had happened" in court. We are unimpressed.

Judicial and administrative proceedings are ordinarily a matter of public record. Transcripts and pleadings are readily available. Witnesses may be interviewed and deposed. A plaintiff who seeks to recover damages arising from litigation precipitated by a defendant's tortious conduct is subject to the same defenses as any other plaintiff, including lack of proximate cause between the conduct and the damage, failure to mitigate damages, and (where negligence is the theory of recovery) contributory negligence. Payless gives no coherent explanation for why it is more difficult to defend a damage claim arising from allegedly unnecessary and emotionally distressing litigation than any other tort action.

We conclude that Payless's proposed rule is inconsistent with the body of case law interpreting section 47(b), as well as fundamental principles governing tort liability and damages. The trial court properly refused to grant the motion in limine.

II*

*Motion for Nonsuit*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1296.

## DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Hull, J., concurred.