[No. D042893. Fourth Dist., Div. One. June 30, 2004.]

RICHARD MANN, JR., et al., Plaintiffs and Respondents, v.
QUALITY OLD TIME SERVICE, INC., et al., Defendants and Appellants,

**COUNSEL**

Ross, Dixon & Bell, James John Dalessio, Daniel J. Cross and Lindsay J. Reese for Defendants and Appellants.

Goodman & Richter and Linda LaVonne Goodman for Plaintiffs and Respondents.

## OPINION

**McINTYRE, J.—** ■ In this case we hold that where a defendant has shown that a substantial part of a cause of action constitutes speech or petitioning activity protected by the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16), thereby requiring the plaintiff to show a probability of prevailing on the cause of action to avoid dismissal, the plaintiff need only show a probability of prevailing on *any part of its claim*. Once the plaintiff makes this showing, the court need not determine whether the plaintiff can substantiate *all theories* presented within the single cause of action. (All undesignated statutory references are to the Code of Civil Procedure.)

■ We further conclude that subdivision (c) of section 425.17, excluding certain claims from the anti-SLAPP statute, does not apply where the portion of the cause of action possibly implicating section 425.17 is not protected by the anti-SLAPP statute.

### FACTUAL AND PROCEDURAL BACKGROUND

Water Systems Support Inc. and its president, Richard Mann, Jr. (together, WSSI), sued Quality Old Time Service, Inc. (Quality), Kent Radford and Robert Caslava (collectively, defendants) and another individual under various theories of liability. WSSI's complaint alleges in part the following.

WSSI is in the business of maintaining industrial water systems. Pursuant to an oral agreement, WSSI hired Caslava and Radford as independent contractors to service some of its customers after they agreed to keep WSSI's customer information and work guidelines confidential. Caslava entered into a written contract with WSSI, but Radford refused to sign the contract, although he verbally agreed to abide by the same terms and conditions required of Caslava. These representations were false and defendants had no intention of honoring the terms of their written and oral agreements.

Defendants worked for WSSI for about three years, thereby acquiring confidential client, pricing and servicing information, and then terminated their contract with WSSI to form a competing company. Defendants solicited WSSI's customers by using its confidential information and making fraudulent and disparaging statements about WSSI, including that it used illegal and carcinogenic chemicals in its cleaning process. Defendants serviced WSSI's customers, claiming they still worked for WSSI, and then replaced WSSI's service stickers with their own stickers to mislead these customers.

Defendants engaged in numerous acts of harassment, including reporting WSSI to the National Response Center and the National Terrorist Hotline,

falsely claiming that WSSI was "pouring illegal carcinogenic chemicals into public drainage systems throughout Southern California." These agencies then "flash faxed" this information to various regulatory and law enforcement agencies, causing WSSI to be investigated. WSSI also began receiving large volumes of unsolicited facsimiles, telephone calls, e-mails, magazine subscriptions, junk mail and pornography, all initiated by defendants.

The foregoing allegations form the factual basis underlying WSSI's 13 causes of action, including, in relevant part, claims for interference with contractual relationship; intentional interference with prospective economic advantage; defamation; and trade libel. Defendants filed a special motion to strike these causes of action, arguing these claims were subject to section 425.16 because (1) their calls to the National Response Center and the National Terrorist Hotline were in furtherance of their constitutional right to petition the government (§ 425.16, subd. (e)(2)) and (2) the statements were made in connection with a "public issue." (§ 425.16, subd. (e)(4).)

In support of their motion, defendants submitted Caslava's declaration, which states: (A) he called the Environmental Protection Agency (EPA) to inform it that he believed WSSI had improperly disposed of water laced with D-Trol, a disinfectant, into storm drains and culverts and directly onto soil and paved surfaces; (B) the EPA suggested that he direct concerns he had regarding WSSI's transportation of D-Trol to the California Highway Patrol Hazardous Materials division (CHP HazMat); and (C) he followed this suggestion and during the next several weeks he received numerous telephone calls regarding his concerns from the EPA, the Water Quality Control Board and other public agencies.

In opposition to the motion, WSSI filed Mann's declaration, repeating the allegations of the complaint that defendants had made false reports about WSSI to the National Response Center and the National Terrorist Hotline. Mann denied knowing anything about defendants' reports to the EPA and CHP HazMat until the instant motion, and denied using illegal chemicals or pouring them into city or storm drains. He also stated that neither the EPA nor CHP HazMat ever contacted WSSI, and the sole investigation WSSI was involved in resulted from a complaint to the National Terrorist Hotline.

WSSI also filed a declaration from Paul Wingert, a WSSI client and referral source, stating that Caslava and Radford informed him that WSSI was using an illegal chemical and illegally dumping the sanitizing solution down storm drains. He further declared that Caslava and Radford never informed him that they had requested an investigation of these practices by the EPA or CHP HazMat, nor did they ask him to participate in any such investigation.

The trial court denied the motion to strike, finding that the challenged claims did not "arise from" an act in furtherance of defendants' right of petition or free speech. Defendants appeal from this order. (§§ 425.16, subd. (j), 904.1, subd. (a)(13).)

## DISCUSSION

## I

### *Anti-SLAPP Law*

■ The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance by allowing a court to promptly dismiss unmeritorious actions or claims that are brought to chill another's valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. (§ 425.16, subd. (a).) Under section 425.16, the initial inquiry is whether the moving defendant has made a threshold showing that the challenged causes of action arise from protected activity, i.e., activity by defendants in furtherance of their constitutional right of petition or free speech. (§ 425.16, subd. (b)(1); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) These acts include: (1) written or oral statements made before a legislative, executive, or judicial proceeding; (2) written or oral statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body; (3) written or oral statements made in a place open to the public or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e).)

■ To determine whether a defendant has met its initial burden, we consider the pleadings and any supporting and opposing affidavits stating facts upon which the liability is based. (§ 425.16, subd. (b)(2); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]" (*Cotati, supra,* 29 Cal.4th at p. 78.) "[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech." (*Ibid.*) The moving defendant has no obligation to demonstrate that the plaintiff's subjective intent was to chill the exercise of constitutional speech or petition rights, or that the action had the effect of chilling such rights. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703]

(*Navellier*).) The "principal thrust or gravamen" of the claim determines whether section 425.16 applies. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494] (*Martinez*), italics omitted.)

 Published appellate court cases have concluded that where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is "merely incidental" to the unprotected conduct (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 419 [9 Cal.Rptr.3d 242] (*Scott*); *Martinez, supra,* 113 Cal.App.4th at p. 188), although this issue is currently under review by the California Supreme Court. (*Kids Against Pollution v. California Dental Association,* review granted Sept. 17, 2003, S117156; *Finke v. Walt Disney Co.,* review granted Nov. 12, 2003, S118936.) Pending the Supreme Court's review of the issue, however, we will follow the existing appellate precedent that the anti-SLAPP statute applies to a mixed cause of action. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906] (*Fox*).)

 If the challenged causes of action arise from protected activity, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citations.]" (*Navellier, supra,* 29 Cal.4th at p. 88.) We apply the de novo standard of review to both prongs of the anti-SLAPP statute. (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919 [130 Cal.Rptr.2d 81] (*Rivero*).)

II

*Analysis*

A. DEFAMATION AND TRADE LIBEL CLAIMS

1. *Constitutionally Protected Speech Under Section 425.16, Subdivision (e)(2)*

 Speech is protected if it is "made in connection with an issue under consideration or review" in an official proceeding (§ 425.16, subd. (e)(2)), regardless of whether the speech concerned an issue in litigation or an issue of public interest. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).) WSSI does not dispute that defendants' act of reporting a suspected crime to interested governmental agencies falls within the scope of section 425.16, subdivision (e)(2) because the reports solicited official investigations regarding WSSI's business practices. (See *ComputerXpress, Inc. v. Jackson* (2001) 93

Cal.App.4th 993, 1009 [113 Cal.Rptr.2d 625] (*ComputerXpress*) and cases cited therein.) Thus the question presented is whether the activity or facts underlying the defamation and trade libel claims are "based on" acts in furtherance of defendants' right to petition the government. (*Cotati, supra,* 29 Cal.4th at p. 78.) To resolve this issue, we turn to the challenged causes of action and the affidavits filed in support of and in opposition to the motion. (§ 425.16, subd. (b)(2).)

▮▮▮▮ Defamation and trade libel both require the intentional publication of a false and unprivileged statement of fact. (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645 [85 Cal.Rptr.2d 397]; *ComputerXpress, supra,* 93 Cal.App.4th at p. 1010.) WSSI alleged in these claims that defendants published false and nonprivileged communications that reflected negatively on its business reputation and caused it economic losses, incorporating by reference the factual allegations that defendants (1) told WSSI's customers that WSSI used illegal carcinogenic chemicals in its cleaning process, and (2) reported these alleged business practices to the National Response Center and the National Terrorist Hotline, resulting in an investigation. Thus, the basis of these claims is not only defendants' comments to WSSI's customers, but also defendants' reports to governmental agencies—petitioning activity protected under section 425.16, subdivision (e)(2). ▮▮▮ Because defendants' reports to governmental agencies formed a substantial part of the factual basis for the defamation and trade libel claims, these claims are subject to the anti-SLAPP statute even though they are also based on statements that were not subject to the statute, i.e., they are "mixed" causes of action. (*Scott, supra,* 115 Cal.App.4th at p. 419; *Martinez, supra,* 113 Cal.App.4th at p. 188.)

In concluding that the complaint did not allege protected conduct, the trial court relied, in part, on statements in the complaint indicating these claims were based on defendants' "non-privileged communications," and indicated that defendants failed to meet their burden of showing any privilege applied. In response to the trial court's inquiry at oral argument as to whether it was suing defendants based on their reports to governmental agencies, WSSI (not surprisingly) stated its claims were not based on this allegation. Thereafter, contrary to its prior telephonic ruling, the trial court concluded that defendants' statements to governmental agencies could not, as a matter of law, give rise to SLAPP claims because the conduct was privileged. As we explain below, the trial court's ruling and comments reveal a misunderstanding of the parties' respective burdens in litigating a special motion to strike under the anti-SLAPP statute.

▮▮▮▮ Although WSSI specified that its claims were based on "non-privileged communications," the complaint was not limited as WSSI suggests. Stated differently, WSSI could have, but did not narrow the reach of these claims by

specifically alleging that defendants defamed it by making false statements to its "customers." Moreover, our high court has rejected the argument that the "validity" of the speech is a proper inquiry when determining whether the anti-SLAPP statute potentially applies. (*Navellier, supra,* 29 Cal.4th at p. 94.) Here, the clear allegations of the complaint that defendants contacted governmental agencies to solicit an investigation of WSSI's activities were sufficient to bring these claims within the ambit of section 425.16, and defendants were not required to also demonstrate that their activity was privileged as a matter of law. (*Navellier,* at pp. 94–95.) The merits of WSSI's claims become relevant only at the second step of the anti-SLAPP analysis, when it must present evidence showing a reasonable probability of success on its claims, and defendants must present evidence defeating WSSI's evidence as a matter of law. (*Ibid.*; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*); *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1089–1090 [114 Cal.Rptr.2d 825].)

We conclude the trial court erred in determining that WSSI's defamation and trade libel claims were not based on defendants' constitutional petitioning activity as defined in the anti-SLAPP statute. Because these mixed claims fall within the purview of subdivision (e)(2) of section 425.16, there is no need to address whether these claims are also protected under subdivision (e)(4).

### 2. *Likelihood of Success on the Merits*

#### a. *Governing Principles*

A cause of action is subject to being stricken under the anti-SLAPP statute only if it "arises from protected speech or petitioning and lacks even minimal merit." (*Navellier, supra,* 29 Cal.4th at p. 89.) A plaintiff is not required "to *prove* the specified claim to the trial court"; rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 411–412 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)

In deciding this question the court again considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); however, it may not weigh the credibility or comparative probative strength of competing evidence. (*Wilson, supra,* 28 Cal.4th at p. 821.) Rather, the court considers whether the plaintiff has made a prima facie showing of facts based on competent admissible evidence that would, if proved, support a judgment in the plaintiff's favor. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 646 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon, supra,* 29 Cal.4th at pp. 58–59.) The

court may also consider the defendant's opposing evidence, but only to determine if it defeats the plaintiff's showing as a matter of law. (*Wilson, supra*, 28 Cal.4th at p. 821; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 867 [44 Cal.Rptr.2d 46].)

The Legislature enacted section 425.16 to address problems created by meritless lawsuits brought to harass those who have exercised their First Amendment constitutional rights of free speech and petition. (*Church of Scientology v. Wollersheim, supra*, 42 Cal.App.4th at p. 644; see also § 425.16, subd. (a).) However, a cause of action may only be stricken under the anti-SLAPP statute if it arises from protected speech or petitioning activity and lacks even minimal merit. (*Navellier, supra*, 29 Cal.4th at p. 89.) Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure.

Stated differently, the anti-SLAPP procedure may not be used like a motion to strike under section 436, eliminating those parts of a cause of action that a plaintiff cannot substantiate. Rather, once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands. Thus, a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit.

Moreover, a defendant has other options to eliminate theories within a cause of action that lack merit or cannot be proven. For example, a defendant can file a motion to strike a particular claim under section 436 concurrently with its anti-SLAPP motion, or it can move for summary adjudication of any distinct claim within a cause of action. (*Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1118 [78 Cal. Rptr.2d 478]; *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854 [16 Cal.Rptr.2d 458].)

b. *Defamation*

Slander is a form of defamation (Civ. Code, § 44), consisting of a false and unprivileged oral publication (Civ. Code, § 46). To establish a prima facie case for slander, a plaintiff must demonstrate an oral publication to third persons of specified false matter that has a natural tendency to injure or that causes special damage. (See *Smith v. Maldonado, supra*, 72 Cal.App.4th at p. 645.) Certain statements are deemed to constitute slander per se, including

statements (1) charging the commission of crime, or (2) tending directly to injure a plaintiff in respect to the plaintiff's business by imputing something with reference to the plaintiff's business that has a natural tendency to lessen its profits. (Civ. Code, § 46, par. 1; *Albertini v. Schaefer* (1979) 97 Cal.App.3d 822, 829 [159 Cal.Rptr. 98].) Slander per se is actionable without proof of special damage. (*Albertini,* at p. 829.)

Applying the above standards to WSSI's evidence, we conclude that WSSI has established a prima facie claim for slander per se. Wingert's sworn declaration states that Caslava and Radford informed him that Mann and WSSI were using an illegal chemical and illegally dumping the solution down city and storm drains. However, he was not informed that they had requested an investigation of these practices with the EPA or CHP HazMat. Mann denied using illegal chemicals or pouring them into city or storm drains. This evidence, if proven, is sufficient to establish a prima facie case of slander per se because the alleged statements tend to injure WSSI in its business reputation. As a result, WSSI was not required to prove that it suffered any damages.

Defendants objected to this evidence on numerous grounds; however, the trial court overruled the objections to the extent it relied on the evidence and impliedly declined to rule upon the remaining objections. Defendants failed to raise these evidentiary issues in their opening brief and made only a passing reference to the existence of their evidentiary objections in a footnote in their reply brief. Issues not raised in an appellant's brief are deemed waived or abandoned. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775]; see also *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].) In any event, we have examined the defendants' objections to the relevant evidence and conclude they are without merit.

Defendants argue WSSI cannot prevail on this claim because complete defenses exist, namely, that their statements were: (1) absolutely privileged under Civil Code section 47, subdivision (b)(3); (2) immune from liability under the *Noerr-Pennington* doctrine (*Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523]; *Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585]) because they arose out of efforts to petition and influence the government; and (3) privileged under Civil Code section 47, subdivision (c). We conclude these defenses do not bar WSSI's entire claim.

i. *Absolute Privilege and Noerr-Pennington Doctrine*

Civil Code section 47, subdivision (b), commonly known as the "litigation privilege," protects statements made in the course of judicial

proceedings. (*Id.*, § 47, subd. (b)(2).) This section also creates a privilege for communications made "in any other official proceeding authorized by law." (*Id.*, § 47, subd. (b)(3).) The privilege is absolute because it applies, if at all, regardless of whether the communication was made with malice or the intent to harm. (*Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1302 [100 Cal.Rptr.2d 437].) Defendants contend that the absolute privilege bars WSSI's defamation claim as a matter of law because they reported WSSI's activities to the government to prompt an investigation, and they spoke to WSSI's customers after making these reports. Based on the evidence presented, we conclude that the absolute privilege does not apply to defendants' statements to WSSI's customers.

■ For the absolute privilege to apply, the challenged communication must be logically related to the proceeding. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 219–220 [266 Cal.Rptr. 638, 786 P.2d 365].) Here, defendants presented no evidence showing the allegedly defamatory comments made to WSSI's customers had any relationship to their reports to the government. In contrast, Wingert's declaration states that Caslava and Radford did not inform him that they had requested an official investigation regarding WSSI's activities and he did not participate or have an interest in any such investigation. This evidence was sufficient to show that the absolute privilege does not apply to defendants' comments to WSSI's customers.

■ The *Noerr-Pennington* doctrine protects private parties from tort liability when they engage in the constitutional right to petition the government. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 21 [43 Cal.Rptr.2d 350].) This doctrine cannot apply to defendants' statements to WSSI's customers because there is no evidence showing that the statements had any relationship to defendants' petitioning activity.

### ii. *Conditional Privilege*

■ Civil Code section 47, subdivision (c), provides a conditional privilege for communications made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." "Application of the privilege involves a two-step analysis. The defendant has the initial burden of showing the allegedly defamatory statement was made on a privileged occasion, whereupon the burden shifts to the plaintiff to show the defendant made the statement with malice. [Citation.] The existence of the privilege is ordinarily a question of law for the court. [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 915 [120 Cal.Rptr.2d 576].)

■ The conditional privilege "is recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest." (*Deaile v. General Telephone Co. of California* (1974) 40 Cal.App.3d 841, 846 [115 Cal.Rptr. 582].) The "interest" must be something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business or similar relationship or the defendant is protecting his own pecuniary interest. (*Rancho La Costa, Inc. v. Superior Court* (1980) 106 Cal.App.3d 646, 664–665 [165 Cal.Rptr. 347].)

Defendants assert that the conditional privilege applies to all of their alleged defamatory statements because the governmental agencies and WSSI customers that they contacted were interested in their statements, and WSSI presented no evidence of malice. Based on the evidence presented, we conclude that the conditional privilege does not apply.

Defendants presented no evidence showing they had any type of relationship with WSSI's customers or that WSSI's customers requested the information. Because defendants and WSSI are business competitors, it is not reasonable to assume that the motive of the communication was innocent; rather, it appears defendants' only interest was to gain WSSI's customers as their own. If we were to accept defendants' unsupported argument, business competitors would be free to publish defamatory statements about the business practices of a rival to its rival's customers by merely contending the customers were "interested" in the subject matter of the communication.

■ Because defendants failed to meet their the burden of establishing that their allegedly defamatory statements to WSSI's customers fell within the conditional privilege of Civil Code section 47, subdivision (c), the burden never shifted to WSSI to show the statements were made with malice. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202–1203 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)

c. *Trade Libel*

■ To prevail on its trade libel claim, WSSI must present evidence showing it suffered some pecuniary loss. (*Erlich v. Etner* (1964) 224 Cal.App.2d 69, 73 [36 Cal.Rptr. 256].) It may not rely on a general decline in business arising from the falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel. (*Id.* at pp. 73–74.) WSSI presented no evidence showing it suffered any pecuniary loss as a result of defendants' actions and it may not rely on the unsupported allegations in its complaint. (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613–614 [129 Cal.Rptr.2d 546].) Thus, the

motion to strike is properly granted as to the trade libel claim because WSSI made no showing of a probability that it would prevail on this cause of action.

## B. INTERFERENCE CLAIMS

### 1. Constitutionally Protected Speech Under Section 425.16, Subdivision (e)(2)

■ A claim for interference with contractual relationship requires a valid contract between the plaintiff and a third party, defendant's knowledge of this contract, intentional acts by a defendant designed to induce the disruption of the contractual relationship and actual disruption of the contractual relationship resulting in damage. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513].)
■ A claim for intentional interference with prospective economic advantage includes the same elements, but involves an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff and the additional element that the defendant's action must have been wrongful apart from the interference itself. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–1154 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

WSSI alleged that defendants' actions induced existing and potential customers to disrupt contractual or potential future business relationships with it, thereby causing it damages. These claims also incorporated by reference the allegations that defendants disparaged WSSI and solicited its customers. These allegations form the factual basis of defendants' alleged liability on the interference claims. While these claims also incorporated by reference WSSI's allegation that defendants made false claims about its business practices to the National Response Center and the National Terrorist Hotline, this allegation cannot form the basis of defendants' liability on these interference claims because WSSI did not allege, nor did the parties present any evidence showing, that defendants informed WSSI's customers of these reports. Stated differently, WSSI's interference claims did not arise from defendants' protected reports to governmental agencies because the evidence presented by the parties shows that WSSI's clients did not know about these reports; thus, the reports could not have caused the disruption of any actual or potential customer relationship.

### 2. Constitutionally Protected Speech Under Section 425.16, Subdivision (e)(4)

■ Section 425.16, subdivision (e)(4) protects any conduct, other than conduct identified in the first three clauses of subdivision (e), in furtherance

of a person's constitutional right of petition or free speech "in connection with a public issue or an issue of public interest." Under this subdivision, the defendant must show the statements or conduct concern a "public issue" or an "issue of public interest." (*Briggs, supra,* 19 Cal.4th at p. 1113.) The court in *Rivero, supra,* 105 Cal.App.4th 913, described three situations in which statements may concern a public issue or a matter of public interest: (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; or (3) the statement or activity precipitating the claim involved a topic of widespread public interest. (*Id.* at p. 924.)

■ Defendants argue that their statements to governmental agencies concerning WSSI's unlawful dumping of toxic chemicals and their subsequent alleged statements to plaintiffs' customers about this activity were matters of "public interest" within the meaning of section 425.16, subdivision (e)(4). However, they presented no argument or evidence that WSSI is an entity in the public eye. Although pollution can affect large numbers of people and is a matter of general public interest, the focus of the anti-SLAPP statute must be on the specific nature of the speech rather than on generalities that might be abstracted from it. (*Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601 [132 Cal.Rptr.2d 191] (*Consumer Justice*).) In *Consumer Justice*, the court held that advertising claims made on behalf of an herbal supplement promising breast enlargement did not involve a public issue or an issue of public interest because the speech was not about "herbal supplements in general," but about "the specific properties and efficacy of a particular product." (*Id.* at pp. 600–603.)

■ Similarly here, defendants' alleged statements were not about pollution or potential public health and safety issues in general, but about WSSI's specific business practices. "If we were to accept [defendants'] argument that we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within the anti-SLAPP statute." (*Consumer Justice, supra,* 107 Cal.App.4th at p. 601.) We conclude that defendants' speech was not made "in connection with a public issue or an issue of public interest" as that phrase is used in section 425.16, subdivision (e)(4). Thus, the trial court properly denied the special motion to strike the two interference claims because the gravamen of these claims "did not consist of any act in furtherance of anyone's right of petition or free speech." (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 631 [7 Cal.Rptr.3d 715].)

## C. APPLICABILITY OF SECTION 425.17

■ The Legislature enacted section 425.17, effective January 1, 2004, to address a "disturbing abuse" in litigants' use of the anti-SLAPP statute. (§ 425.17, subd. (a).) The new statute applies to lawsuits brought before its effective date because it constituted a procedural change regulating the conduct of ongoing litigation and thus triggered no retroactivity concerns. (*Brenton v. Metabolife International, Inc.* (2004) 116 Cal.App.4th 679, 689–690 [10 Cal.Rptr.3d 702].)

■ Section 425.17 expressly excludes certain types of claims from the anti-SLAPP special motion to strike procedure and, as relevant to this action, provides that the anti-SLAPP statute does not apply to claims brought against a person primarily engaged in the business of selling goods or services, arising from any statement or conduct by that person if both of the following conditions exist: (1) "[t]he statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing . . . commercial transactions in, the person's goods or services, . . . "; and (2) "[t]he intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c).)

■ WSSI contends subdivision (c) of section 425.17 provides an independent basis for upholding the trial court's denial of the motion because defendants disseminated the alleged false statements regarding WSSI's business practices to WSSI clients for the purpose of gaining these clients for their competing business. However, the function of section 425.17 is to exclude certain claims that would otherwise fall within the reach of the anti-SLAPP statute. (§ 425.17, subds. (b) & (c).) Here, those portions of the challenged claims implicating section 425.17 (i.e., defendants' statements to WSSI's customers) do not involve petitioning activity or an issue of public interest and are not protected by the anti-SLAPP statute. (§ 425.16, subd. (e).) As such, section 425.17 does not apply.

## D. CONCLUSION

In summary, we conclude that the anti-SLAPP statute does not apply to WSSI's interference causes of action, but that it potentially applied to WSSI's defamation and trade libel causes of action, requiring WSSI to present evidence showing a probability of prevailing on these causes of action. WSSI presented such evidence for its defamation cause of action, but it failed to do so for its trade libel cause of action, and hence the trade libel cause of action must be stricken.

Because we announce a new rule of law regarding the proper analysis of the second prong of the anti-SLAPP procedure, defendants shall have the opportunity to file a motion to strike any claim they perceive lacks merit under section 436 upon remand.

## DISPOSITION

The order denying the motion to strike is reversed insofar as it denied defendants' special motion to strike the trade libel cause of action; otherwise, the order is affirmed. The matter is remanded to the superior court with directions to enter a new order consistent herewith and for further proceedings consistent with this opinion. Defendants are awarded their costs on appeal.

McConnell, P. J., and Aaron, J., concurred.