[No. A052537. First Dist., Div. Three. Dec. 30, 1991.]

SUSAN A. et al., Plaintiffs and Appellants, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

## COUNSEL

Nathan Cohn for Plaintiffs and Appellants.

Senneff, Bernheim, Kelly & Kimelman, Michael D. Senneff, Lewis, D'Amato, Brisbois & Bisgaard, Gail Z. Grant and David B. Paynter for Defendants and Respondents.

## OPINION

CHIN, J.—Susan, Douglas, and Marcus A. appeal from the trial court's grant of summary judgment in favor of respondents John Watts Podboy and the County of Sonoma (County) on appellants' complaint for breach of confidence, invasion of privacy, public disclosure of private facts, false light, defamation, intentional infliction of emotional distress, and negligence. They contend that the trial court erred in finding that Civil Code section 47,

subdivision (b),[1] renders absolutely privileged Podboy's statements to the press regarding Marcus's arrest on criminal charges. We find, based on the record before us, that summary judgment was improper because neither section 47(b) nor any of the other privileges on which respondents rely applies to Podboy's statements to the press. Therefore, we reverse.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 1987, the Santa Rosa police arrested Marcus (age 14) on suspicion of attempted murder and took him into custody at juvenile hall. Marteen Miller, the public defender, asked Podboy, a forensic psychologist, to evaluate Marcus for defense purposes. Pursuant to this request, Podboy met with and interviewed Marcus.

A reporter telephoned Podboy and stated that he was calling at Miller's direction and that Miller wanted Podboy to disclose his impressions of Marcus. Podboy believed that Miller had in fact authorized the reporter's inquiry. However, given the complicated nature of the case, Podboy did not respond and instead attempted to reach Miller to discuss the matter further, including the appropriate limits of the press disclosure. Because Miller was unavailable, Podboy spoke with the chief deputy public defender, Bruce Kinnison, who indicated that Podboy could speak with the press, but that he should use his judgment. According to Podboy, he asked Marcus if disclosure to the press was permissible, and Marcus said yes, "[i]n so many words . . . ." Podboy subsequently spoke with the reporter about Marcus, and the local press published an article reporting the conversation. Podboy allegedly repeated his statements during a television interview. Marcus eventually pleaded guilty to assault with a deadly weapon.

Susan A., Marcus's mother and guardian ad litem, filed suit on Marcus's behalf against Podboy and the County based on Podboy's statements to the press. She and her husband, Douglas, also sued on their own behalf. Podboy and the County moved for summary judgment on the ground that Podboy's statements were privileged. ■■ ■■ After hearing, the trial court

---

[1]Unless otherwise indicated, all further statutory references are to the Civil Code. For convenience, we will refer to section 47, subdivision (b), as section 47(b). The trial court's decision cited former section 47, subdivision 2, which is substantively identical to section 47(b). For purposes of this appeal, we will refer to the current enactment of section 47.

[2]In reversing, we hold only that the record fails to establish any of the absolute privileges respondents assert on appeal. We express no opinion as to the applicability of any other privilege or defense.

found that the absolute privilege of section 47(b) applied and granted the motion.[3] After entry of judgment, the A.'s filed this appeal.

## DISCUSSION

 The principal issue on appeal is the trial court's application of section 47(b)'s privilege for publications "made: . . . [¶] (b) In any . . . judicial proceeding . . . ." (§ 47(b).) This privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have [sic] some connection or logical relation to the action. [Citations.]" (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) With one statutory exception that is not relevant here, the privilege is absolute if the publication satisfies all of these requirements; even actual malice does not overcome it. (*Id.*, at pp. 215-216.) If there is no dispute as to the operative facts, the availability of the privilege is a matter of law which the court may determine on summary judgment. (*Gootee* v. *Lightner* (1990) 224 Cal.App.3d 587, 591 [274 Cal.Rptr. 697].)

 ██ On the record before us, we find section 47(b) inapplicable because Podboy's statements to the press do not satisfy the requirement that the communication be "made in judicial or quasi-judicial proceedings . . . ." (*Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 212.)[4] Podboy correctly points out that the privilege is available "even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.]" (*Ibid.*) However, republications to nonparticipants in the action are generally not privileged under section 47(b). (*Silberg, supra,* at p. 219.) Thus, the privilege does not apply where publication is to persons in no way connected with the proceeding. (*Financial*

---

[3]The trial court's exclusive reliance on section 47(b) in granting the motion disposes of the County's argument that we should affirm because the A.'s failed to file a separate statement responding to the County's statement of undisputed facts. (See Code Civ. Proc., § 437c, subd. (b).) The granting of a motion for failure to file a separate statement is a matter for the trial court's discretion, and we will not affirm on this ground unless the record shows that the trial court exercised its discretion. (*Minor* v. *Municipal Court* (1990) 219 Cal.App.3d 1541, 1546-1547, fn. 2 [268 Cal.Rptr. 919].) Because the trial court granted the motion under section 47(b) and cited the A.'s failure to file a separate statement only as a justification for finding the facts in accordance with the undisputed facts and evidence respondents submitted, we will not affirm for noncompliance with Code of Civil Procedure section 437c, subdivision (b).

[4]In his brief, Podboy notes that the A.'s did not raise this argument below. Where, as here, the applicability of a statute is a question of law that depends on undisputed facts appearing in the record, an appellate court may consider a theory that was not before the trial court. (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738].)

*Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 778 [234 Cal.Rptr. 653]; *Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 827 [106 Cal.Rptr. 718], disapproved on another ground in *Silberg, supra*, at pp. 216-219.) ▉ We find that, on the facts of this case, the press is not connected with the proceeding so as to render section 47(b) applicable.[5]

Our Supreme Court reached a similar conclusion in *Washer* v. *Bank of America* (1943) 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338], disapproved on another ground in *MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 551 [343 P.2d 36]. There, an officer of a defendant made a statement about plaintiff to newspaper reporters and others after a National Labor Relations Board proceeding that resulted in an order for plaintiff's reinstatement. (*Washer, supra*, at pp. 824-825.) The court rejected defendants' claim of privilege under former section 47, subdivision 2, stating: "The extension of this absolute privilege to statements not made in the judicial or legislative proceeding itself is . . . limited . . . to communications such as those made by a client to his attorney or by an individual to a prosecuting attorney or other public officer preliminary to a proposed criminal proceeding. [Citation.]" (*Washer, supra*, at p. 832.)

We reject Podboy's attempt to distinguish *Washer* on the ground that it involved statements "made by a party, presumably without the participation or direction of counsel, *after* the proceeding had concluded and a decision had been rendered." As is evident from the reasoning of the court we have quoted above, the court's holding was not so limited; the court focused on the connection to the action of those involved in the communication. (See *Emde* v. *San Joaquin County etc. Council* (1943) 23 Cal.2d 146, 154 [143 P.2d 20, 150 A.L.R. 916] [citing *Washer* for the proposition that a party to a labor dispute has no absolute privilege to publicize facts surrounding the dispute].) While subsequent cases have expanded the scope of section 47(b) to include publication to nonparties with a substantial interest in the proceeding (see *Costa* v. *Superior Court* (1984) 157 Cal.App.3d 673, 678 [204 Cal.Rptr. 1]), the expansion does not encompass publication to the general public through the press. Such an expansion would swallow up the general rule, which our Supreme Court recently reaffirmed, that section 47(b) does not privilege "republications to nonparticipants in the action . . . ." (*Silberg* v. *Anderson, supra*, 50 Cal.3d at p. 219.)

In *Bradley* v. *Hartford Acc. & Indem. Co., supra*, 30 Cal.App.3d 818, Division Two of this district also refused to apply former section 47,

---

[5]Given this conclusion, we need not address the A.'s argument that, under *Cutter* v. *Brownbridge* (1986) 183 Cal.App.3d 836 [228 Cal.Rptr. 545], section 47(b) does not apply to disclosure of privileged and private information.

subdivision 2, where plaintiffs alleged, among other things, that defendants had made false and malicious representations to newspaper and television reporters regarding court documents. The court reasoned that former section 47, subdivision 2, did not afford a full scale, blanket authorization to republish otherwise privileged material on a nonprivileged occasion to persons to whom the privilege does not apply, and found the section inapplicable because defendants had made the statements outside of the court, not during any legal proceeding, to reporters who were strangers and had no interest in the action. (*Bradley, supra,* at pp. 826-827.) Adopting the reasoning of *Kennedy* v. *Cannon* (1962) 229 Md. 92 [182 A.2d 54], the court stated that "an attorney who wishes to litigate his case in the press will do so at his own risk [citation]." (*Bradley, supra,* at p. 828.) We reach the same conclusion here with respect to application of section 47(b).[6]

*Bradley*'s reliance on *Kennedy* is significant because in *Kennedy,* the Maryland Court of Appeals rejected a claim of absolute privilege on facts very similar to those before us. Defendant in *Kennedy* was the attorney for a man accused of rape. (*Kennedy* v. *Cannon, supra,* 182 A.2d at p. 55.) After interviewing his client, defendant told a newspaper editor that his client denied the charge based on the woman's consent. (*Id.,* at pp. 55-56.) The paper published defendant's statement, and the woman sued for defamation. In reversing a directed verdict for defendant, the court held that there was no absolute privilege because publication to the press was not in a judicial proceeding. (*Id.,* at pp. 57-58.) In reaching this result, the court rejected defendant's argument that the privilege applied because he had made the statement incident to his duty as counsel and to protect his client's physical safety. (*Id.,* at pp. 55-56, 59.) We similarly reject Podboy's claim that section 47(b) applies because he spoke to the press to obtain a litigation advantage for Marcus. In the words of the Maryland court, a contrary holding "would open the door to the universally condemned 'trial by press,' a procedure forbidden to counsel and subversive of the fair and orderly conduct of

---

[6]*Silberg* disapproved *Bradley* to the extent it created the requirement that the communication be made to promote the interest of justice. (*Silberg* v. *Anderson, supra,* 50 Cal.3d at pp. 216, 219.) In so doing, *Silberg* reaffirmed the validity of that part of *Bradley* on which we rely, i.e., that the privilege did not apply because "both the communicator and the communicatee were strangers to the action . . . ." (*Silberg, supra,* at p. 217.) That only the communicatee in this case is a stranger to the action does not render *Bradley* inapplicable. The general rule regarding publications to nonparticipants focuses on the status of the listener rather than that of the speaker. (See *Financial Corp. of America* v. *Wilburn, supra,* 189 Cal.App.3d at p. 778 [attorney's statements "to 'persons throughout Northern California' " not absolutely privileged under former § 47, subd. 2].)

judicial proceedings."[7] (*Kennedy, supra,* at p. 59.) It would also contravene the rule that application of section 47(b) does not depend on a speaker's motives, morals, ethics, or intent. (See *Silberg* v. *Anderson, supra,* 50 Cal.3d at p. 220.)

Podboy's reliance on *Abraham* v. *Lancaster Community Hospital* (1990) 217 Cal.App.3d 796 [266 Cal.Rptr. 360] is misplaced. There, plaintiff alleged, among other things, that defendant caused the local press to publish defamatory allegations contained in a proposed federal complaint. (*Id.,* at p. 805.) The court first found that the press's publication regarding the matter, which was simply "a report of the pleadings in the federal complaint," was absolutely privileged under former section 47, subdivision 4, as a fair and true report in a public journal of a judicial proceeding. Based on this finding, the court held that former section 47, subdivision 2, applied; "[s]ince both the pleadings in the federal court and publication in the press of a fair and true report of the pleadings are absolutely privileged, it would defeat the purpose of [former] section 47, subdivisions 2 and 4 to punish the transmittal of the privileged pleadings to the press." (*Abraham, supra,* at p. 823, fn. omitted.) Unlike in *Abraham,* where defendant simply transmitted to the press a publicly available judicial document on which the press was privileged to report, there is no evidence in this case that the press would have had access to the information Podboy disclosed or that Podboy's statements were part of a publicly available record. Accordingly, the rationale of *Abraham* does not apply.

■ As an alternative to section 47(b), respondents argue that Government Code section 820.2 provides a separate basis for immunity in this case. Government Code section 820.2 immunizes public employees from liability for injuries resulting from their acts or omissions that were "the result of the exercise of the discretion vested in [them], whether or not such discretion be abused." The County argues that Podboy's statements to the press fall within the protection of this section as "discretionary activity done in order to gain defense objectives and advantage in Marcus [A.'s] criminal proceedings." Similarly, Podboy argues that Government Code section 820.2 applies because the public defender directed him "to exercise his judgment in answering the press' questions . . . ."

This argument fails under Supreme Court precedent that respondents ignore. In *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 793-794 [73 Cal.Rptr. 240, 447 P.2d 352], the court established that immunity under

---

[7]Courts and commentators generally agree that absolute litigation privileges do not protect statements made to the media. (See *Green Acres Trust* v. *London* (1984) 141 Ariz. 609 [688 P.2d 617, 622-623].)

Government Code section 820.2 is available only for basic policy decisions, i.e., "activity which may be characterized as the 'planning' rather than the 'operational' level of decision making. [Citations.]" (*Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 415 [134 Cal.Rptr. 402, 556 P.2d 764].) In *Sanborn*, the court held that a county clerk's decision to give a press interview was not a discretionary act for purposes of immunity under Government Code section 820.2, reasoning that, although the clerk "may have had discretion to discuss the . . . matter with the press, . . . the decision to do so was [not] in the nature of a 'basic policy decision' made at the 'planning' stage of City's operations."[8] (*Sanborn*, *supra*, at p. 415.) Similarly, while the decision to have Podboy speak with the press arguably involved an exercise of discretion, it was not the type of basic policy decision entitled to immunity under Government Code section 820.2.

Moreover, even assuming that it was such a decision, summary judgment would be improper because there is a question of fact as to who made the decision to have Podboy speak with the press.[9] There was evidence before the trial court that the reporter told Podboy he was calling at Miller's direction and that Miller wanted Podboy to disclose his impressions of Marcus. Podboy believed that Miller had, in fact, approved the conversation. There was also evidence showing that, before responding to the inquiry, Podboy obtained approval from the chief deputy public defender. Indeed, in support of his motion, Podboy stated as an undisputed fact that he spoke with the press because the public defender's office directed him to do so. If it was not Podboy's decision to speak with the press, Podboy's allegedly defamatory statements are not privileged under Government Code section 820.2. (See *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 794 [221 Cal.Rptr. 840, 710 P.2d 907]; *Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d at pp. 415-416.) Because there is a disputed factual question as to who made the decision, summary judgment would be improper, even were we to assume that the decision otherwise meets the requirements of Government Code section 820.2.

■ Finally, we reject the County's argument under *Howard* v. *Drapkin* (1990) 222 Cal.App.3d 843 [271 Cal.Rptr. 893], that a quasi-judicial immunity applies to Podboy's statements because the public defender retained him

---

[8]With respect to Government Code section 820.2, the County primarily relies on *Miller* v. *Hoagland* (1966) 247 Cal.App.2d 57 [55 Cal.Rptr. 311] and *Burgdorf* v. *Funder* (1966) 246 Cal.App.2d 443 [54 Cal.Rptr. 805]. However, *Sanborn* expressly noted that "[t]he broad rule of discretionary immunity" these cases suggest "must be reexamined in the light of the principles" *Johnson* subsequently announced. (*Sanborn* v. *Chronicle Pub. Co., supra,* 18 Cal.3d at p. 414.)

[9]Indeed, the trial court denied an earlier summary judgment motion of the County because there was a triable factual issue as to whether the County "was in control of or authorized or directed Dr. Podboy to speak to the media concerning Marcus [A.] . . . ."

to evaluate Marcus, and Podboy made findings and recommendations for the court in this role. *Howard* involved an action arising out of a custody dispute. Plaintiff and her ex-husband had jointly hired a psychologist to perform a family evaluation and render nonbinding findings and recommendations. (*Id.*, at pp. 848-849.) In affirming dismissal of the complaint, the court afforded quasi-judicial immunity to the psychologist as a "*neutral* third part[y] . . . *performing dispute resolution services* . . . connected to the judicial process . . . ." (*Id.*, at p. 860, italics added.) The court reasoned that the availability of the immunity turns on whether the person is functioning as an advocate or a nonadvocate. (*Id.*, at p. 859.) Thus, immunity is available to a psychologist who is mediating a child custody dispute and who is not an advocate for either parent. (*Ibid.*) Conversely, public defenders, by virtue of their status as advocates for the defendant, have no such immunity. (*Ibid.*) Here, the public defender, as Marcus's attorney, retained Podboy on Marcus's behalf in order to assist the defense, not on behalf of the court as a neutral party. In speaking with the press, Podboy intended to relate facts that would be helpful to the case and that would rebut certain press allegations about premeditation. In this role as Marcus's advocate, Podboy is not entitled to quasi-judicial immunity.

The judgment is reversed. Respondents shall pay appellants' costs on appeal.

Merrill, Acting P. J., and Werdegar, J., concurred.

A petition for a rehearing was denied January 21, 1992, and respondents' petition for review by the Supreme Court was denied April 2, 1992.