Filed 6/30/21  Santy v. Banafsheha CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELAINA SANTY, | B302388 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BC704194 |
| v. | |
| RABBIE BANAFSHEHA et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Reversed with directions.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome; Veatch Carlson, Peter H. Crossin; Rosario Perry, Rosario Perry and Steven A. Coard for Defendants and Appellants.

Gilbert & Nguyen and Jonathan T. Nguyen for Plaintiff and Respondent.

Defendants Rabbie Banafsheha, Shabnam Banafsheha, George Azzi, and TGA Management & Investment appeal from an order denying their special motion to strike under California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16).[1] The motion targeted a claim asserted by defendants' tenant, plaintiff Elaina Santy, asserting defendants engaged in tenant harassment under the Santa Monica Municipal Code by, among other things, filing an allegedly fraudulent Petition for Determination of Tenant Not in Occupancy with the Santa Monica Rent Control Board. As alleged in plaintiff's complaint, a landlord engages in tenant harassment under the Santa Monica Municipal Code when, among other things, the landlord "[i]nfluence[s] or attempt[s] to influence a tenant to vacate a rental housing unit *through fraud*, intimidation or coercion." (Santa Monica Mun. Code, § 4.56.020, subd. (f), italics added.)

The trial court denied the motion under the first prong of the anti-SLAPP statute. Although the court acknowledged defendants' petition to the Rent Control Board constituted protected activity, it reasoned plaintiff's claim was based on defendants' alleged "pattern of harassment"—not the petition itself. We conclude the trial court misapplied the analytical framework articulated in *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*) for determining when relief is sought based on allegations arising from protected activity in a mixed cause of action. We also conclude, with respect to the second prong of the anti-SLAPP

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise designated.

statute, that plaintiff cannot establish a probability of prevailing on her claim because defendants' petition was privileged, as a matter of law, under Civil Code section 47, subdivision (b). We therefore reverse and direct the trial court to enter an order granting defendants' special motion to strike.

## FACTS AND PROCEDURAL BACKGROUND

Defendants are the owners and property managers of a multiunit residential property in Santa Monica. Plaintiff has been a tenant in one of the units for about 35 years.

In April 2018, plaintiff sued defendants asserting causes of action for tenant harassment, breach of covenant of quiet enjoyment, conversion, intentional infliction of emotional distress, and negligence. The complaint alleges that, beginning in 2015, defendants "began a campaign of harassment and intimidation of Plaintiff." Specifically, paragraph 10 alleges: "These acts included, without limitation, the following:"

> "j.     Defendants filed a Petition for Tenant Not in Occupancy, contending that Plaintiff did not occupy her apartment. That Petition was a fraud and was based on false and fraudulent statements made in declarations by Mr. Banafsheha and Mr. Aziz, including for example that 'there are no indications of personal residence therein, such as a bed or furniture,' when that was at all times completely untrue. Not only that, but their Petition was further based on extreme and dishonest trickery. Defendants required Plaintiff to move her furnishings supposedly for repainting and reflooring of her apartment;

3

she temporarily moved many of her apartment's contents into storage for that purpose, but many other of the contents remained. While some of the contents were in storage, Defendants filed their Petition claiming that Plaintiff was out of occupancy of the Premises. Plaintiff opposed the Petition with a large amount of evidence showing she was at all times in possession of the Premises. A hearing investigator also inspected the Premises and his findings demonstrated that Plaintiff remained in occupancy thereof. Caught in the act of pursuing a baseless and fraudulent Petition, Defendants withdrew it."

In the first cause of action for "Tenant Harassment," the complaint alleges, "Section 4.56.020 of the Santa Monica Municipal Code provides that with respect to any rental housing unit, no landlord shall in bad faith do, among other things, any of the following: . . . b. Influence o[r] attempt to influence a tenant to vacate a rental housing unit through fraud, intimidation or coercion." The complaint asserts, under "section 4.56.040 of the Santa Monica Municipal Code, Defendants, and each of them, are liable to Plaintiff for each of their violations of section[ ] 4.56.020."

Defendants moved to strike the allegations in paragraph 10j concerning their filing of a Petition for Tenant Not in Occupancy. In a supporting declaration, Banafsheha explained that his family trust purchased the property in August 2015. During a walkthrough inspection in advance of the purchase, Banafsheha spoke with plaintiff, who told him "she did not

4

actually reside at the premises, but only 'stayed their [*sic*] part time' " and "she 'owned a house outside of Santa Monica.' " Banafsheha observed "the unit appeared to be used principally for storage of personal property" and "there was no indication of anyone's personal residence in Plaintiff's unit." After closing escrow, Banafsheha consulted with his attorney and, on May 6, 2016, he filed a Petition for Determination of Tenant Not in Occupancy and New Maximum Allowable Rent with the Santa Monica Rent Control Board. The petition sought a more than twofold increase to the rent for plaintiff's unit.

According to Banafsheha, after he received plaintiff's response to the petition, he found that plaintiff "had moved furniture into the unit and begun occupancy of the premises." On his attorney's advice, Banafsheha dismissed the petition because, according to his attorney, "the change of [plaintiff's] living condition" meant "the Petition would no longer be granted."

Defendants argued their petition constituted protected activity taken " 'in furtherance of the exercise of the constitutional right of petition' " and a writing made in connection with an " 'official proceeding authorized by law.' " (Boldface omitted.) Emphasizing the complaint listed the petition as one of several " 'acts' " allegedly constituting " 'intimidation and harassment of Plaintiff,' " defendants maintained plaintiff's claims arose out of this protected activity. And defendants argued plaintiff had no probability of prevailing on the claims because the litigation privilege (Civ. Code, § 47, subd. (b)) shielded defendants from liability for alleged injuries caused by the petition.

Plaintiff opposed the motion, arguing the "petitioning conduct" described in paragraph 10j of her complaint was not

the " 'principal thrust' or 'gravamen' " of any claim. As for the conduct giving rise to liability, plaintiff maintained her claims arose from defendants' "scheme to harass and intimidate Plaintiff" and the allegations regarding the petition merely provided "factual context" for the harassing conduct, including "Defendants' attempt to trick Plaintiff by causing her to move her furnishings . . . to generate fictitious supposed facts in order to support the petition [defendants] filed." Plaintiff did not dispute that defendants' petitioning activity was protected under the litigation privilege, but she reiterated that "[t]he allegations of protected activity provide necessary context to other allegations in the Complaint relating to Defendants' deception of Plaintiff . . . [and] non-protected harassment and intimidation of Plaintiff."

In her supporting declaration, Plaintiff detailed several occasions in which defendants "unnecessary[ily]" entered her unit, failed to make repairs, removed her potted plants, claimed not to have received her rent checks, or made " 'buyout' offers" to induce her to vacate the unit. Regarding the allegations in paragraph 10j, plaintiff declared she moved the furnishings in her unit because defendants told her the unit needed to be repainted. She explained this was the reason her "belongings were in disarray" when defendants inspected and photographed the unit in advance of filing their petition. Plaintiff said she "always occupied and resided" in the unit and she denied Banafsheha's assertion that she ever told him otherwise.

The trial court denied defendants' special motion to strike. While the court acknowledged that an anti-SLAPP motion " 'may be used to attack parts of a count,' " the court reasoned the allegations regarding defendants' petition to the Rent Control Board " 'merely provide[d] context, without supporting a claim

6

for recovery.' "  The court explained:  "Plaintiff's suit is one that alleges a pattern of harassment by Defendants with the intended purpose of causing her to vacate her apartment.  Part of that harassment included tricking Plaintiff into moving her furnishings out of the unit for repairing and reflooring so that Defendants could file a petition stating she was not in occupancy of the unit.  [Citation.]  It was necessary for Plaintiff to state Defendants filed a fraudulent petition as context for why they tricked her to move her furnishings out of the unit. [¶] This allegation notwithstanding, no cause of action is *based on* the petition or the filing thereof; it is based on the trickery which occurred because of Defendants' desire to file a petition."

Having determined defendants failed to make a threshold showing under the anti-SLAPP statute's first prong, the trial court declined to determine under the second prong whether plaintiff demonstrated a likelihood of prevailing on the merits.

## DISCUSSION

### 1.  *The Anti-SLAPP Analysis and Standard of Review*

The anti-SLAPP statute, section 425.16, establishes a procedure for expeditiously resolving "nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 235.)  "When served with a SLAPP suit, the defendant may immediately move to strike the complaint under section 425.16. To determine whether this motion should be granted, the trial court must engage in a two-step process." (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1543; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

The first prong of the anti-SLAPP analysis requires the court to decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon, supra,* 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Id.* at p. 79, quoting § 425.16, subd. (b).) An " 'act in furtherance of a person's right of petition or free speech' " includes "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

If the court finds the defendant has made the threshold showing, the analysis proceeds to the second prong, under which the court "determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon, supra,* 29 Cal.4th at p. 67; § 425.16, subd. (b)(1).) To establish the requisite probability of prevailing, the plaintiff need only have " 'stated and substantiated a legally sufficient claim.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 (*Briggs*).)

We independently review the trial court's ruling on an anti-SLAPP motion under the de novo standard. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

**2.** ***The Challenged Allegations Support a Claim Arising from Protected Activity***

Defendants' special motion to strike targeted paragraph 10j of the complaint, which, as fully set forth in our statement of facts, alleges defendants conducted "a campaign of harassment and intimidation of Plaintiff" that "included" the filing of "a Petition for Tenant Not in Occupancy, contending that Plaintiff did not occupy her apartment." Paragraph 10j alleges the "Petition was a *fraud* and was based on false and *fraudulent statements*" by defendants, including "that 'there are no indications of personal residence [in plaintiff's unit], such as a bed or furniture,' when that was at all times completely untrue." (Italics added.)

The filing of a petition for a determination of occupancy with a municipal rent control board is plainly protected activity under section 425.16, subdivision (e)(2), and plaintiff tacitly concedes as much. (See *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285–1286 [communications with municipal departments to request action by municipal official constitute protected activity under the anti-SLAPP statute]; see also *Briggs, supra,* 19 Cal.4th at p. 1115 [" ' "[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking

9

administrative action." ' "]; *Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1074, 1083 (*Aron*) [landlord's filing of unlawful detainer action in alleged violation of Santa Monica Tenant Harassment Ordinance constituted protected activity under anti-SLAPP statute].) However, plaintiff argues the allegations relating to the petition were merely "incidental or collateral" to her claims, and it was the "pattern and practice of intimidation"—not the filing of the petition—that was the basis for each cause of action. The argument is inconsistent with the prescribed first prong analysis for mixed causes of action under *Baral*.

In *Baral*, our Supreme Court resolved a split of authorities regarding mixed causes of action—i.e., causes of action alleging protected and unprotected activity—and held that an anti-SLAPP motion may be used to strike discrete allegations of protected activity without defeating an entire cause of action. (*Baral, supra,* 1 Cal.5th at p. 393.) Under *Baral*, "[w]hen relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded" in conducting the first prong analysis, and the trial court then must determine whether "relief is sought based on allegations arising from activity protected by the statute." (*Id.* at p. 396.) "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16," and allegations of "protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Id.* at p. 394.) However, if the targeted allegations "amount to a 'cause of action' in the sense that [they are] *alleged to justify a remedy*," those allegations are properly subject to a special motion to strike, even though they may be mixed with allegations of unprotected

10

activity in a single cause of action.  (*Id.* at p. 395, italics added.)
The critical question is whether "*allegations of protected activity
. . . are asserted as grounds for relief.*"  (*Ibid.*)

In *Park v. Board of Trustees of California State University*
(2017) 2 Cal.5th 1057, 1063 (*Park*), our Supreme Court revisited
the showing necessary to establish a claim arises from protected
activity.  There, the court emphasized that " '[t]he only means
specified in section 425.16 by which a moving defendant can
satisfy the ["arising from"] requirement is to demonstrate
that the *defendant's conduct by which plaintiff claims to have
been injured* falls within one of the four categories described in
subdivision (e).' "  (*Ibid.*, italics added.)  Thus, *Park* instructs
that "in ruling on an anti-SLAPP motion, courts should consider
the elements of the challenged claim and what actions by the
defendant supply those elements and consequently form the
basis for liability."  (*Ibid.*)

In her first cause of action for "Tenant Harassment,"
plaintiff alleges "Defendants, and each of them, are liable
to Plaintiff for <u>each</u> of their violations of section[ ] 4.56.020" of
the Santa Monica Municipal Code.  According to her complaint,
"Section 4.56.020 . . . provides that with respect to any rental
housing unit, no landlord shall in bad faith do, among other
things, any of the following:  . . . b.  Influence o[r] attempt to
influence a tenant to vacate a rental housing unit *through fraud*,
intimidation or coercion."  (Italics added; see *Action Apartment
Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1238
& fn. 1 (*Action Apartment Assn.*) [explaining Santa Monica's
"Tenant Harassment ordinance prohibits a variety of malicious
acts by landlords directed at tenants in rental housing units,"
and quoting § 4.56.020 of the Santa Monica Mun. Code].)  As

our Supreme Court explained in *Action Apartment Assn.*, the Santa Monica ordinance authorizes a "civil enforcement action . . . by '[a]ny person,' " and provides for civil penalties amounting to "the greater of statutory damages in the amount of $1,000 or actual damages, attorney fees and costs, and punitive damages" for each violation of the ordinance. (*Action Apartment Assn.*, at p. 1239, citing Santa Monica Mun. Code, § 4.56.040, subds. (b), (d).)

In accepting plaintiff's argument that the allegations related to defendants' filing of the petition " 'merely provide[d] context, without supporting a claim for recovery,' " the trial court reasoned it was "necessary for Plaintiff to state Defendants filed a fraudulent petition as context for why they tricked her to move her furnishings out of the unit." However, under *Baral*, the court was required to focus on the allegations of protected activity to determine whether those allegations were necessary "to justify a remedy." (*Baral, supra,* 1 Cal.5th at pp. 395–396.) And, under *Park*, the court was required to "consider the elements of the challenged claim" and determine whether the alleged protected actions "supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063.) When analyzed in accordance with this prescribed framework, it is clear that the "allegations of protected activity" in paragraph 10j of the complaint were "asserted as grounds for relief." (*Baral*, at p. 395, italics omitted.)

As plaintiff's first cause of action states, a landlord violates section 4.56.020 of the Santa Monica Municipal Code when the landlord "[i]nfluence[s] or attempt[s] to influence a tenant to vacate a rental housing unit *through fraud*, intimidation or coercion." (Santa Monica Mun. Code, § 4.56.020, subd. (f),

italics added.) Defendants' alleged "baseless and fraudulent Petition" to declare plaintiff not in occupancy and to obtain a more than twofold increase to the rent for her unit plainly constitutes a basis for liability under this provision of the Santa Monica ordinance. And, because *fraud* is a necessary element of plaintiff's claim for tenant harassment, defendants' protected activity—the filing of a *fraudulent* petition with the Rent Control Board—was necessarily "alleged to justify a remedy" under the ordinance. (*Baral, supra,* 1 Cal.5th at p. 395; *Park, supra,* 2 Cal.5th at p. 1063.) Defendants' special motion to strike satisfied the first prong of the anti-SLAPP statute.[2]

3. ***The Litigation Privilege Bars Plaintiff's Claim Based on Defendants' Alleged Fraudulent Petition to the Rent Control Board***

Because the trial court concluded the targeted allegations did not assert a cause of action arising from protected activity, it refrained from reaching the second prong of the anti-SLAPP statute. Nonetheless, given that the issue is subject to our de novo standard of review and that defendants raised the issue, giving plaintiff the opportunity to fully brief it, it is proper for

---

[2] Our holding does not preclude plaintiff from seeking leave to amend her complaint to the extent she can allege, separate and apart from defendants' petition to the Rent Control Board, that defendants harassed her by requiring her to move her furniture without a legitimate reason or engaged in other harassing conduct. (See *Park, supra,* 2 Cal.5th at p. 1063 [a claim is subject to a special motion to strike only if " 'the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in' " the anti-SLAPP statute (italics omitted)].)

13

this court to decide in the first instance whether there is a probability that plaintiff can prevail on her tenant harassment claim based on the allegedly fraudulent petition. (See *Navellier, supra,* 29 Cal.4th at p. 95 [remanding to the Court of Appeal to decide in the first instance whether the plaintiffs had established a probability of prevailing on the merits, even though trial court did not expressly rule on second prong]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, 742 [affirming Court of Appeal judgment regarding second prong although trial court did not reach the issue].)

Defendants contend, as they did in their special motion to strike, that plaintiff's claim based on their petition to the Rent Control Board is barred under the litigation privilege. "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. . . . 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*Action Apartment Assn., supra,* 41 Cal.4th at p. 1241.) "If there is no dispute as to the operative facts, the availability of the privilege is a matter of law." (*Susan A. v. County of Sonoma* (1991) 2 Cal.App.4th 88, 93 (*Susan A.*); *Gootee v. Lightner* (1990) 224 Cal.App.3d 587, 591.)

"The litigation privilege is absolute and broadly applied regardless of malice." (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1272; *Action Apartment Assn., supra,* 41 Cal.4th at p. 1241.) Its purpose is to " 'afford litigants freedom of access to the courts . . . and to promote the unfettered

14

administration of justice even though as an incidental result it may [sometimes] . . . provide . . . immunity to the . . . malignant slanderer.'" (*Tiedemann v. Superior Court* (1978) 83 Cal.App.3d 918, 925 (*Tiedemann*), italics omitted.)  "In order that the privilege apply, it is unnecessary that the defamatory matter be relevant or material to an issue before the tribunal but need only have some proper connection or relation to the proceeding and in achieving its objectives." (*Id.* at pp. 924–925.)  "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" (*Action Apartment Assn., supra,* 41 Cal.4th at p. 1241.)

"Similarly, strong policy reasons exist to assure free and open channels of communication between citizens and public agencies and authorities charged with the responsibility of investigating wrongdoing [citations], without which protection would effectively close such important channels." (*Tiedemann, supra,* 83 Cal.App.3d at pp. 925–926.)  Thus, the "statutory phrase 'in any other official proceeding authorized by law' has been broadly interpreted to include those proceedings which resemble judicial and legislative proceedings such as administrative boards and quasi-judicial and quasi-legislative proceedings." (*Id.* at p. 924, citing *Ascherman v. Natanson* (1972) 23 Cal.App.3d 861, 865.)  "In determining whether an administrative body or agency possesses such quasi-judicial power, the preliminary factors to be determined are '(1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts and,

15

more importantly, (3) whether its power affects the personal or property rights of private persons.' " (*Tiedemann,* at p. 925.)

We agree with defendants—plaintiff cannot demonstrate a probability of prevailing on the merits because the litigation privilege bars her claim based on defendants' petition to the Rent Control Board, as a matter of law.[3] The Santa Monica Rent Control Law created the Rent Control Board as "an integral part of the government of the City," with the authority to "enact rules and regulations governing hearings and appeals of individual adjustment of ceilings on allowable rents." (Santa Monica City Charter, art. XVIII, §§ 1802 & 1805, subd. (d).) As relevant here, Santa Monica Rent Control Board Regulation 3304 establishes a procedure for a landlord to petition

---

[3] Plaintiff does not dispute that the litigation privilege applies to defendants' petition—she did not dispute the privilege's applicability in the trial court and she does not dispute it on appeal. Instead, plaintiff suggests she can plead around the privilege by amending her complaint to state a claim for malicious prosecution. (See *Action Apartment Assn., supra,* 41 Cal.4th at p. 1242 [observing litigation privilege does not extend to malicious prosecution claims].) Defendants of course dispute the proposed claim's viability, but we need not address the issue here. Because a plaintiff cannot amend a pleading to defeat an anti-SLAPP motion that satisfies the first prong, plaintiff's proposed amendment (even if it may be viable) is not a valid basis to affirm the trial court's ruling. (See *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1074 [allowing leave to amend after the defendant makes a prima facie showing "would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing [SLAPP] suits"].)

the Board to set a new maximum allowable rent for a unit upon the Board's determination that a tenant is not in occupancy. The regulation sets the landlord's and tenant's respective evidentiary burdens (Santa Monica Rent Control Bd. Regs., ch. 3, § 3304, subds. (b), (e), (g)); it outlines a process for a Board staff member to review the evidentiary submissions (*id.*, § 3304, subds. (d), (f)); it provides for an evidentiary investigation and hearing before a Board Administrator or Hearing Supervisor to determine whether the tenant is not in occupancy (*id.*, § 3304, subd. (d)(2)) and an appeal to the Board to affirm, reverse, or modify the determination (*id.,* § 3304, subd. (j)); and, critically, the regulation authorizes the Board to increase the maximum allowable rent that a private landlord can charge for rental property based on set criteria (*id.,* § 3304, subd. (i)). The regulation plainly establishes the sort of quasi-judicial "official proceeding authorized by law" to which the litigation privilege applies. (Civ. Code, § 47, subd. (b); *Tiedemann, supra,* 83 Cal.App.3d at p. 925.)

As for the privilege's other requirements, the undisputed evidence proves the alleged "false and fraudulent statements" described in paragraph 10j of the complaint were communications, made by authorized individuals in a quasi-judicial proceeding, to achieve the objects of the rent control petition, that had a logical relation to the proceeding. (See *Action Apartment Assn., supra,* 41 Cal.4th at p. 1241.)

The challenged allegations specifically refer to "statements," contained in "declarations made by Mr. Banafsheha and Mr. Aziz" in support of the petition, that asserted there were " 'no indications of personal residence [in plaintiff's unit], such as a bed or furniture.' " Santa Monica Rent Control Board

17

Regulation section 3304, subdivision (g) provides that a landlord can prove a unit is not tenant occupied by presenting evidence that "the tenant's personal possessions are not located in the unit" or that "the tenant does not carry on basic living activities at the unit for extended periods of time." Under this regulation, the declarants' statements were clearly designed to obtain an official determination from the Rent Control Board and therefore "must be considered part of the official proceeding itself." (*Tiedemann, supra,* 83 Cal.App.3d at p. 926.)

The fact that the Board acted on the petition by requesting a response from plaintiff also proves the statements had some logical relation or connection to the official proceeding. (See Santa Monica Rent Control Bd. Regs., ch. 3, § 3304, subd. (d) ["If the petition and supporting documents state a prima facie case, the Board shall mail a copy of the petition and a blank response form to the tenant(s) and occupant(s) of the unit."].) And, as the landlord for the unit, Banafsheha's status fulfills the litigation privilege's final condition of authorized participation in the proceeding. (See *id.*, § 3304, subd. (b) [authorizing "Landlords" to submit petition seeking a determination the tenant is " 'not in occupancy' "].) Thus, the undisputed "operative facts" establish "the availability of the privilege [as] a matter of law." (*Susan A., supra,* 2 Cal.App.4th at p. 93.)

Because the litigation privilege protects defendants from liability for the statements contained in their petition to the Rent Control Board, plaintiff cannot demonstrate a reasonable probability of prevailing on her claim under the anti-SLAPP

18

statute's second prong.  The trial court erred in denying defendants' special motion to strike.[4]

## DISPOSITION

The order is reversed and the trial court is directed to enter a new order (1) striking the allegations contained in paragraph 10j of the complaint, and (2) awarding attorney fees as directed in section 425.16, subdivision (c).  Defendants Rabbie Banafsheha, Shabnam Banafsheha, George Azzi, and TGA Management & Investment are entitled to costs.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.


We concur:



EDMON, P.J.                          KALRA, J.[*]

---

[4]    Plaintiff filed a motion for sanctions, arguing defendants' appeal was frivolous and without merit.  We need not catalogue all of plaintiff's arguments.  It will suffice to say that, because we have concluded the trial court prejudicially erred, we deny plaintiff's sanctions motion.

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.