Filed 11/30/23  Besh v. Jaureguito CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BASIL BESH,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JOHN W. JAUREGUITO,<br><br>        Defendant and Respondent. | A164397<br><br>(Alameda County Super. Ct. No. RG21098090) |

Plaintiff Basil Besh, M.D., and defendant John Jaureguito, M.D., are orthopedic surgeons and business partners.[1]  While exploring a buyout by Besh of Jaureguito's interest in one of their businesses, Jaureguito sent an email to Besh and others accusing Besh of breaching his fiduciary duties to their businesses, Jaureguito, and their other partners, and of improperly diverting business profits to himself.  In response, Besh sued Jaureguito for defamation.  The trial court granted Jaureguito's special motion to strike filed pursuant to Code of Civil Procedure[2] section

---

[1] For convenience, and intending no disrespect, we refer to the doctors by their last names.

[2] Undesignated statutory references are to the Code of Civil Procedure.

1

425.16, known as the anti-SLAPP statute.  Besh appeals.  He argues Jaureguito's statements are not protected by the anti-SLAPP statute and the litigation privilege does not apply.  We disagree and affirm.

## BACKGROUND

Besh and Jaureguito each own a 50 percent share of two entities:  Medland Development, LLC (Medland Development), and Medland Staffing, LLC (Medland Staffing; collectively, Medland entities).  Medland Development owns, operates, and leases a medical office building in Fremont.  Besh manages the Medland entities.  Besh and Jaureguito own Precision SurgiCenter, LLC, (SurgiCenter) together with three other physicians (SurgiCenter physicians), with Besh serving as one of SurgiCenter's managers.

In 2020, Jaureguito approached Besh about the possibility of Besh buying Jaureguito's share of Medland Development.  The negotiations focused on the value to be assigned to Medland Development's office building.  As he conducted due diligence, Jaureguito discovered alleged conflicts of interest related to Besh's management of Medland Development and leasing of office space in Medland Development's office building.

Thereafter, Jaureguito sent Besh an email accusing him of having a conflict of interest and breaching his fiduciary duties to the Medland entities, SurgiCenter, and those businesses' members.  Jaureguito asserted that Besh entered into a new lease between Medland Development and SurgiCenter without consent or approval from the members of either entity.  He

2

claimed that in doing so Besh violated his fiduciary duties both to the members of SurgiCenter and to Jaureguito as a member of Medland Development based on the lease terms. Jaureguito told Besh to: (1) move forward with the change in ownership and management of SurgiCenter, (2) "stop diverting Surgicenter profits to Medland Staffing by charging an unjustified 5% of the cost of all Surgicenter personnel, which money you have been improperly paying all to yourself," and (3) resign as a manager of either Medland Development or SurgiCenter. Jaureguito copied the SurgiCenter physicians on the email.

Three weeks later, Jaureguito filed a lawsuit against Besh and the Medland entities (dissolution action). The complaint asserted causes of action for dissolution, wind up and appointment of receiver as to the Medland entities, breach of management agreements, constructive trust, accounting, and unjust enrichment.

This litigation followed. Besh sued Jaureguito for defamation based on statements in Jaureguito's email. Jaureguito filed a special motion to strike pursuant to the anti-SLAPP statute. In his supporting declaration, Jaureguito stated he wrote the email with serious consideration of filing litigation against Besh regarding the issues raised in the email. He explained he had already hired an attorney to file a lawsuit based on these issues and he copied his attorney on the email.

The trial court granted the special motion to strike, concluding the email was a pre-lawsuit communication made in connection with anticipated litigation and sent to the

SurgiCenter physicians, who were interested persons with mutual and overlapping business interests. The court also determined Besh had not met his burden of showing probability of success on the merits because the litigation privilege (Civ. Code, § 47, subd. (b)) applied to Jaureguito's statements.

## DISCUSSION

### I.    The Anti-SLAPP Statute and Standard of Review

The anti-SLAPP statute is designed to prevent meritless lawsuits from chilling individuals' exercise of their rights of petition or free speech. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) A special motion to strike may be brought against claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) If the plaintiff cannot make this demonstration, the court will strike the claim. (*Wilson*, at p. 884.)

We review the trial court's ruling on an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) We consider the pleadings and supporting and opposing affidavits

4

stating the facts upon which the liability or defense is based. (§ 425.16, subd. (b)(2).)  In the second step, the "court does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.)

## II.  Step One:  Claims Arising from Protected Activity

Initially, we must decide whether Besh's defamation claims arise from protected activity.  (*Park*, *supra*, 2 Cal.5th at p. 1061.) As relevant here, protected activity includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

To fall within section 425.16, subdivision (e)(2), Jaureguito's statements must have been made "in connection with" an issue under consideration or review by a judicial body. (§ 425.16, subd. (e)(2).)  A "statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266 (*Neville*).)  The requisite connection must not be merely with a proceeding but with an issue under review in that proceeding.  (*Rand Resources, LLC v.*

5

*City of Carson* (2019) 6 Cal.5th 610, 620; *Paul v. Friedman* (2002) 95 Cal.App.4th 853, 867 (*Paul*).) When interpreting the statute, "we keep in mind that the Legislature has instructed the courts to construe the anti-SLAPP statute 'broadly.' " (*Dorit v. Noe* (2020) 49 Cal.App.5th 458, 468.)

Applying this standard, we conclude Jaureguito's statements constitute protected activity under section 425.16, subdivision (e)(2). First, Jaureguito's statements relate to the substantive issues in the dissolution action, which seeks dissolution of the Medland entities due to Besh's alleged breaches of his fiduciary duties. In his email, Jaureguito accuses Besh of having conflicts of interest and breaching his fiduciary duties to all parties, including the SurgiCenter physicians. He claims that in entering the lease, Besh breached his fiduciary duties to Jaureguito as a member of Medland Development and to all SurgiCenter members. Jaureguito asks Besh to distribute all profits owed to Jaureguito, to stop diverting SurgiCenter profits to Medland Staffing, and to resign as manager of Medland Development or SurgiCenter. These statements relate to the dissolution action, in which Jaureguito alleges Besh breached his fiduciary duties in managing the Medland entities, causing deadlock and internal dissension. Like the email on which Besh's defamation suit is based, the dissolution action includes allegations that Besh misappropriated funds from the Medland entities, threatened to unilaterally amend leases, and refused to make distributions to Jaureguito.

6

Contrary to Besh's claim, this case bears no resemblance to *Paul*, *supra*, 95 Cal.App.4th 853.  There, a securities broker filed a lawsuit against an attorney who, during a preceding arbitration proceeding, conducted a "harassing investigation" into the broker's life and disclosed to the broker's clients private information about the broker's financial affairs, spending habits, tax liabilities, and personal relationships.  (*Id.* at pp. 861, 856–858.)  The *Paul* court held the attorney's intrusive investigation into the broker's personal life and subsequent disclosures did not come within the anti-SLAPP statute because they did not occur in connection with *an issue* under review in the arbitration proceeding, which concerned the broker's alleged securities fraud. (*Id.* at pp. 856, 857, 867–868.)

Here, by contrast, the issues in the dissolution action include whether the Medland entities should be dissolved based on deadlock and internal dissension due to allegations of Besh's breach of fiduciary duties, misappropriation of funds, and refusal to make distributions.  Jaureguito's email concerns these allegations and relates to these issues.

Second, Jaureguito's statements are directed to people having some interest in the dissolution action.  (*Neville*, *supra*, 160 Cal.App.4th at p. 1266.)  Besh is correct that SurgiCenter and the SurgiCenter physicians are not parties to the dissolution action.  But a person need not be a party in order to have some interest in the litigation.  "Although many anti-SLAPP cases involving prelitigation communications concern demand letters or other statements to adverse parties or potential adverse parties

7

[citations], there is no such requirement in the text of section 425.16, subdivision (e)(2). That provision has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation." (*Id*. at pp. 1270, 1259–1260, 1267–1268 [letter sent to company's customers accusing former employee of misappropriation of trade secrets and discouraging customers from doing business with former employee constituted protected activity].)

The SurgiCenter physicians have some interest in the dissolution action because it is litigation between two fellow owners of SurgiCenter that is based, at least in part, on a claim that Besh misappropriated Medland Staffing funds by charging SurgiCenter unjustified fees then diverting its profits. The SurgiCenter physicians possess an interest in claims that one of their managers and co-owners overcharged them and misappropriated those funds. Additionally, Jaureguito may have believed the SurgiCenter physicians could be witnesses in the dissolution action. (See *Neville*, *supra*, 160 Cal.App.4th at pp. 1267–1268 [company "reasonably could believe" the letter recipients "had an interest in the dispute as potential witnesses to, or unwitting participants in, [former employee's] alleged misconduct"].)

Finally, prelitigation statements "made in good faith anticipation of litigation under serious consideration at the time the statements were made" may constitute protected activity under the anti-SLAPP statute. (*People ex rel. Allstate Ins. Co. v.*

8

*Rubin* (2021) 66 Cal.App.5th 493, 499.) So too here. In his declaration in support of the special motion to strike, Jaureguito explained that he wrote the email in good faith and with serious consideration of filing litigation against Besh; indeed, he noted he had hired an attorney to file a lawsuit and copied his attorney on the email. Just three weeks later, Jaureguito filed the dissolution action. (See, e.g., *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1005 [owner copied company's attorney on email and complaint filed days after sending email].) A reasonable inference from the evidence is that Jaureguito contemplated litigation against Besh seriously and in good faith when he wrote the email. (See *Neville, supra,* 160 Cal.App.4th at p. 1269.) In sum, we conclude the statements constitute protected activity.

Next, we must determine whether Besh's claims arise from protected activity. "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Jaureguito's speech itself, i.e., his email, forms the basis for Besh's defamation complaint, so his claims arise from Jaureguito's protected activity.

## III. Step Two: Probability of Prevailing

We next consider whether Besh demonstrated his "claims have at least 'minimal merit.'" (*Park, supra,* 2 Cal.5th at

9

p. 1061.)  The trial court determined that the litigation privilege bars Besh's claims.  We agree.

"Civil Code section 47, subdivision (b) defines what is commonly known as the 'litigation privilege.' " (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 912.)  The privilege typically "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  The litigation privilege "may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."  (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 323.)  Doubt about whether the privilege applies is decided in favor of applying it.  (*Kashian*, *supra*, at p. 913.)

Besh argues the litigation privilege is inapplicable for two reasons, neither of which is persuasive.  First, Besh argues the litigation privilege does not apply because the SurgiCenter physicians copied on the email are not parties to, and do not have an interest in, the dissolution action.  But the litigation privilege includes "publication to nonparties with a substantial interest in the proceeding."  (*Susan A. v. County of Sonoma* (1991) 2 Cal.App.4th 88, 94; see also *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 4–6 [letter sent by attorney for homeowners association to association members]; *Costa v. Superior Court* (1984) 157 Cal.App.3d 673, 676, 678 [letter sent by board chair of fraternal lodge to membership of

subsidiary lodge].)  As previously discussed, the SurgiCenter physicians have an interest in the dissolution action.

Relying on *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134 (*Rothman*), Besh contends the SurgiCenter physicians are uninterested parties unrelated to the dissolution action.  In *Rothman*, during a press conference, a celebrity's representatives claimed an attorney and his clients had falsely accused the celebrity of torts to extort money from the celebrity.  (*Id.* at pp. 1138–1139.)  *Rothman* held the litigation privilege does not extend to litigating in the press.  (*Id.* at pp. 1139, 1149.)  The court explained that the persons to whom the statements were made had "no legitimate connection with" litigation between the attorney's clients and the celebrity.  (*Id.* at p. 1151.)  While the representatives' statements during the press conference "happen[ed] to parallel" the celebrity's litigation interests in that they "complement[ed]" the celebrity's desire to be publicly vindicated, they did not function to advance his interests in the litigation itself.  (*Id.* at pp. 1147–1148.)[3]

---

[3] Other cases on which Besh relies, many concerning statements made to the general public, are similarly distinguishable because they involve statements to the press. (See, e.g., *GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 145–146, 153–154 [privilege did not encompass a press release and tweet]; *Argentieri v. Zuckerberg* (2017) 8 Cal.App.5th 768, 776, 785 [privilege did not apply to statement sent to press]; *Susan A. v. County of Sonoma*, *supra*, 2 Cal.App.4th at pp. 92–94 [privilege did not apply to statements psychologist made to reporter about evaluation of juvenile criminal defendant].)

Besh asserts the crux of *Rothman* is that any communication to a nonparticipant does not come within the litigation privilege because it is not necessary to, nor in furtherance of, the litigation. We disagree. *Rothman* did not hold that the privilege cannot apply to a communication to a nonparty. The court explained that the communication must have a functional connection to litigation in that it "must function as a necessary or useful step in the litigation process and must serve its purposes." (*Rothman, supra,* 49 Cal.App.4th at p. 1146.) Here, Jaureguito's statements advance his interests in, and serve as a useful step in the process of, the dissolution action. In his email, Jaureguito expresses allegations of Besh's wrongdoing and makes requests of Besh based on these allegations, and the dissolution action includes claims addressed in the email. This satisfies the "connection or logical relation" requirement of the litigation privilege. (*Id.* at pp. 1145, 1146.)

We are no more persuaded by Besh's related contention that the litigation privilege does not apply because the email is not a prelitigation demand. Besh cites *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, to support his argument. There, our colleagues in Division Three held "that the privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute, and not when a threat of litigation is made merely as a means of obtaining a settlement." (*Id.* at p. 36.) As *Edwards* explained, the litigation privilege may attach to pre-litigation statements when a judicial proceeding is "actually

contemplated seriously and in good faith to resolve a dispute," meaning that "the mere potential or 'bare possibility' that judicial proceedings 'might be instituted' in the future is insufficient to invoke the litigation privilege." (*Ibid*.)

Here, as previously discussed, the record demonstrates there was not merely a potential or bare possibility of future litigation when Jaureguito wrote the email. Instead, he in good faith contemplated and seriously considered litigation. (*Action Apartment Association, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 ["prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration"].) Jaureguito filed the dissolution action only three weeks after sending his email, and included his attorney on it. "While not dispositive, whether a lawsuit was ultimately brought is relevant to the determination of whether one was contemplated in good faith at the time of the demand letter." (*Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 683.) In sum, we conclude Besh cannot demonstrate a probability of prevailing because the litigation privilege bars his claims.

## DISPOSITION

The order granting Jaureguito's anti-SLAPP motion is affirmed. Jaureguito is entitled to his costs on appeal (Cal. Rules of Court, rule 8.278(a)(2)) and may seek recovery of his attorney's fees pursuant to section 425.16, subdivision (c), in amounts to be determined by the trial court. (*Neville, supra,* 160 Cal.App.4th at p. 1271.)

BROWN, P. J.

13

WE CONCUR:

STREETER, J.
HIRAMOTO, J.*                    *Besh v. Juareguito*  (A164397)

---

\* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.